Filed 3/6/23  P. v. Ramirez CA1/4

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FOUR

THE PEOPLE,

Plaintiff and Respondent,

v.

RAY RAMIREZ,

Defendant and Appellant.

A163475

(Alameda County Super. Ct. No. 18CR008346)

Defendant Ray Ramirez appeals from the trial court's judgment convicting him of evading a peace officer with willful disregard for safety in violation of Vehicle Code section 2800.2, subdivision (a) and sentencing him to serve three years in state prison, which judgment the court issued upon the parties agreeing to a negotiated disposition of his case.  Ramirez argues that prior to entering judgment, the court erred in denying his motion to withdraw his no contest plea.  He entered this plea as part of a negotiated disposition, but late moved for its vacatur on grounds that the plea agreement is ambiguous regarding the sentence he was to receive; the court applied the wrong legal standard in evaluating the motion; the court improperly relied on irrelevant circumstances to deny the motion; and he established good cause for granting his motion in two respects.  We conclude Ramirez's arguments are without merit and affirm.

1

# I. BACKGROUND

In a May 2018 complaint, the Alameda County District Attorney's office charged Ramirez with one count each of possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1)); carrying a loaded concealed firearm within a vehicle (*id.*, § 25400, subds. (a)(1), (c)(6)); evading a peace officer with willful disregard for safety (Veh. Code, § 2800.2, subd. (a)); carrying an unregistered, loaded firearm on one's person (Pen. Code, § 25850, subds. (a), (c)(6)); possession of ammunition by a prohibited person (*id.*, § 30305, subd. (a)(1)); and misdemeanor hit and run driving (Veh. Code, § 20002, subd. (a)).  Also, Ramirez was alleged to have been convicted of a prior strike offense.  (Pen. Code, §§ 1170.12, subd. (c)(1); 667, subd. (e)(1).)  Ramirez pleaded not guilty to all counts.

## A. *The June 2018 Hearing Regarding the Parties' Plea Agreement*

At a June 2018 hearing, the parties told the court they had reached a negotiated disposition of Ramirez's case.  The prosecutor said Ramirez would "admit" one of the charged counts, evading a peace officer with willful disregard for safety in violation of Vehicle Code section 2800.2, subdivision (a) (Ramirez actually agreed to plead no contest to the count), and the prior conviction allegation.  Also, Ramirez would be released on a *Cruz* waiver "for medical purposes, which will allow him to seek treatment while out of custody.[2]  However, he is agreeing, as a result of his conviction to [a violation of Vehicle Code section 2800.2, subdivision (a)], to a three-year prison term, which is the aggravated term.  Because we're agreeing to release

---

[1] All statutory citations are to the Penal Code unless otherwise stated.

[2] A "*Cruz* waiver" permits the court to impose a greater sentence than bargained for if a defendant released subject to the waiver willfully fails to appear for sentencing.  (*People v. Cruz* (1988) 44 Cal.3d 1247, 1254, fn. 5.)

him on a *Cruz* waiver prior to the sentencing date, the defendant will agree to also admit the first prior conviction, which will double the exposure, so that he's facing a total exposure of six years at eighty percent. However, it's understood that if he shows up at the R and S date, that the sentencing court can allow that admission to be stricken, so that he will simply receive the three-year state prison term. If, however, he fails to show up at the R and S date, that would be a violation of the *Cruz* waiver, and he would be subject to up to six years in state prison, subject to the credit limitations of a strike prior." This exchange followed:

"THE COURT: In other words, the strike prior admission would remain intact, and the Court then is looking at the aggravated term of three, plus the strike, for double that.

"[PROSECUTOR]: That's correct, Your Honor.

"THE COURT: So six years.

"[PROSECUTOR]: Six years at eighty percent, subject to CDR restrictions or credits.

"[DEFENSE COUNSEL]: And, Your Honor, I erroneously put three years felony probation on the plea form and that's not correct. It's just three years state prison.

"THE COURT: I'll strike that."

The court reviewed with Ramirez, and he agreed to, the terms of the *Cruz* waiver. These included that, as the court said, if he failed to comply with any of the terms, "your plea would still stand, which is going to include an admission of your first prior strike conviction, and any offers would be withdrawn, and the Court could then sentence you up to the maximum sentence of six years."

3

The court reviewed with Ramirez the rights he was waiving in entering into the plea agreement, and questioned him about the plea waiver form he had signed and initialed as part of the agreement. Ramirez indicated that he had signed and initialed the form "freely and voluntarily." The court then reviewed the potential consequences of his plea:

"THE COURT: Before I take your plea, you must understand the potential consequences. The potential prison sentence—

"Is it sixteen, two, three?

"[PROSECUTOR]: Yes, Your Honor.

"THE COURT: The potential prison sentence for the plea you are entering a plea to is sixteen months, two years or three years in the state prison.

"The understanding is that you would receive—

"[PROSECUTOR]: The aggravated term of three.

"THE COURT: It is the three.

"Aggravated term of three years in the state prison.

"Do you understand that?

"DEFENDANT: Yeah."

Later, the court stated, "You are also agreeing to admit a prior conviction. That prior conviction . . . is a strike prior, sir. As a result, it doubles the term, for a total of six years in state prison, to be served at eighty percent. [¶] Do you understand that, sir?" Ramirez replied, "Yes." The court said that, should Ramirez appear for sentencing, "the Court would allow you to withdraw your admission of that prior, which would reduce your term in custody to three years in the state prison. [¶] Do you understand that?" Ramirez responded, "Yes, sir."

4

The court explained that "[a]nother judge will be sentencing you and it will not be me," "[a]nd this negotiated disposition has not been discussed with the judge . . . . If he disapproves of the disposition, you would be permitted to withdraw your plea of guilty or no contest, your not guilty plea would be re-entered, all dismissed charges reinstated and your case scheduled for a preliminary hearing. [¶] Do you understand that?" Ramirez replied, "Yes."

In response to further questions by the court, Ramirez said he had had enough time to talk with his attorney and had told her all he knew about his case. The court asked him if he had any questions about what he was doing, which led to the following exchange:

"[RAMIREZ]: Only one. Okay. Say for instance, hopefully not, but if it is found to be cancer in my kidney and I'm under treatment, do I still have to go in to custody at the 60-day mark or would it be advanced for a future date?

"THE COURT: That is something that would have to be taken up at the time of your sentencing.

"[RAMIREZ]: Okay.

"THE COURT: I can't make you any guarantees as to what might happen, but the . . . Court will certainly consider that when you are sentenced. . . .

"[RAMIREZ]: Okay.

"THE COURT: And no promises as to what would happen.

"[RAMIREZ]: Understood. Thank you.

"[PROSECUTOR]: For the record, that is something we discussed also with defense counsel. If, in fact, he gets a life-threatening diagnosis, the sentencing court could certainly consider that and modify the sentence as the sentencing court deems appropriate.

5

"[DEFENSE COUNSEL]: And, Your Honor, yes, that's my understanding that we're—that there's no promises made as to what would happen, but that the lines of communication would be open with the district attorney and the Court about what to do depending on the diagnosis.

"THE COURT: Very well."

Ramirez entered a plea of no contest to a violation of Vehicle Code section 2800.2, subdivision (a) and admitted the prior conviction. The court found that he had "expressly, knowingly, understandingly and intelligently waived his statutory and constitutional rights," and that "the plea was freely and voluntarily made with the understanding of the nature of the charges pending as well as the consequences of the plea." It confirmed with Ramirez that he was admitting the prior conviction, found a factual basis for his plea of no contest,[3] accepted the plea, and found Ramirez guilty of a felony violation of Vehicle Code section 2800.2, subdivision (a) (as well as of a parole violation). He was released on his own recognizance subject to the *Cruz* waiver.

## B. *Ramirez's 2021 Motion To Withdraw His No Contest Plea*

Over the next three years, Ramirez's sentencing was continued numerous times due to his seeking and receiving medical treatment for kidney cancer, his change in counsel, and pandemic-related reasons. In July 2021, he moved to withdraw his no contest plea for good cause under Penal Code section 1018. In his supporting brief, Ramirez argued as good cause that he and his counsel at the time of the June 2018 hearing "genuinely

---

[3] At the hearing, the prosecutor stated, and defense counsel accepted, as a factual basis for the plea that "on May 4th of 2018, [Ramirez] was stopped for a traffic event by the CHP. During the stop [Ramirez] accelerated away, was chased by the officers with lights and siren. He went 85-miles an hour in a 35-miles per hour zone and ran a red light."

6

believed at the signing of his plea form . . . that the deal he was agreeing to was a 3-year top. . . . Furthermore, at the time of taking the plea deal, [he] believed he was dying of cancer. He was in a hopeless state and did not have the will to continue contesting his criminal matter. However, there has been a change of circumstances to [his] medical condition that has not only changed his physical outlook, but his mental outlook as well."

Ramirez submitted a declaration in support of his motion, in which he stated, "While I maintained my innocence in this matter, I felt at the time that this was in my own best interest. I no longer feel that way. [¶] At the time of entering my plea, I was under the impression that I was dying of kidney cancer. I was feeling rather hopeless and did not wish to fight my criminal charges. [¶] I felt at the time (and still do) there was a reasonable defense to the accusations that are made against me, but my medical condition made me yield to the pressure of the moment. [¶] I no longer believe that I am dying from cancer. I received treatment for the cancerous tumor in my body and now must undergo annual examinations to make sure that no cancer returns. [¶] Furthermore, at the time of taking the plea deal in June 2018, it was my understanding from my attorney that the offer I was agreeing to was for a maximum of 3-years. My genuine understanding was that the amount of time to be served would be determined at sentencing, and that it would be a top of 3 years."

At the hearing on Ramirez's motion to withdraw his no contest plea, the prosecutor contended the June 2018 hearing transcript demonstrated that Ramirez agreed to a fixed three-year sentence, that Ramirez had no misunderstanding about it and entered his plea "knowing what he was doing," and that there was "simply no basis for him to withdraw the plea regardless of whatever buyer's remorse he may have . . . ."

7

Ramirez's counsel's response included that the court should not "gloss over whether the change of circumstances with his health might in and of itself be enough to find good cause to withdraw the plea. I think taking a deal and just resolving the case and moving on with it because he thinks he's going to die in prison either way isn't really a knowing, intelligent, and voluntary taking of the plea. . . . It's certainly not an intelligent one if somebody who thinks they're dying decides to take a bad deal."

The court denied Ramirez's motion. It found that the June 2018 hearing transcript showed he was not then certain that he had anything malignant because he asked if his placement in custody could be deferred *if* he later learned he had cancer, and that the transcript also showed the parties agreed to a fixed three-year sentence, not a three-year "top." The court concluded, "So from the Court's perspective, I don't see where that confusion is. He may have had confusion that he says he has, but it isn't supported in the record and it isn't supported by the statements of his own counsel at the time. So . . . I don't have that there. There was supposed to be an open communication. He did indicate that there was an understanding he might have health concerns and they need to be addressed. We've tried to address them all along the way with continuances over and over and over again in order to allow him to seek health treatment, which I believe he has been doing."

The trial court further stated, "Nothing that I've seen leads me to believe that [the negotiated disposition] wasn't knowingly and intelligently entered into. It may well have been that [Ramirez] was simply trying to resolve the case to get on with other issues, but that happens all the time. The question is whether or not he misunderstood, if he didn't know what was happening. He had a 16-month stretch originally. He had a 15-year stretch

8

another time. I don't—he's not new to the system. The Court does believe that he was aware of what was going on. . . . I don't believe that I have sufficient evidence at this point to lead me to believe that at this late date it's appropriate to allow the withdrawal of the plea. [¶] So under those circumstances and based on the evidence that I have before me, the Court denies the motion to withdraw the plea."

On August 2, 2021, the sentencing court struck Ramirez's prior conviction and sentenced him to the upper term of three years in state prison for his violation of Vehicle Code section 2800.2, subdivision (a), awarded him certain custody and conduct credits, indicated his term would be served at 50 percent credit, and ordered him to pay certain fines and fees.

Ramirez filed a timely notice of appeal from an August 2, 2021 order or judgment, but he incorrectly indicated his appeal was after a jury or court trial. He attached to his notice a request for a certificate of probable cause (granted by the trial court) which, along with the date listed on the notice for the order or judgment appealed from, indicates he intended to appeal from that part of the court's August 2, 2021 judgment sentencing him to three years in state prison. Ramirez's notice is sufficient. (*In re Joshua* (2007) 41 Cal.4th 261, 272 [we liberally construe notices of appeal if it is reasonably clear what the appellant is trying to appeal from and the respondent cannot possibly be misled or prejudiced].)

## II. DISCUSSION

Ramirez claims the trial court erred in denying his motion to withdraw his no contest plea for several reasons.

### A. *Legal Standards*

Ramirez moved to withdraw his plea under Penal Code section 1018. It states in relevant part, "On application of the defendant at any time before judgment . . . , the court may, . . . for a good cause shown, permit the plea of

9

guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be liberally construed to effect these objects and to promote justice."

"To establish good cause to withdraw a guilty plea, the defendant must show by clear and convincing evidence that he or she was operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress. [Citation.] The defendant must also show prejudice in that he or she would not have accepted the plea bargain had it not been for the mistake." (*People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*); see *People v. Simmons* (2015) 233 Cal.App.4th 1458, 1466 [" 'good cause must be shown by clear and convincing evidence,' " quoting *People v. Cruz* (1974) 12 Cal.3d 562, 566].)

" 'A plea may not be withdrawn simply because the defendant has changed his [or her] mind.' [Citation.] The decision to grant or deny a motion to withdraw a guilty plea is left to the sound discretion of the trial court. [Citations.] 'A denial of the motion will not be disturbed on appeal absent a showing the court has abused its discretion.' [Citations.] 'Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them.' " (*Breslin*, *supra*, 205 Cal.App.4th at p. 1416.) " '[W]hen a trial court's decision rests on an error of law, that decision is an abuse of discretion.' " (*People v. Patterson* (2017) 2 Cal.5th 885, 894.)

## B. *The Plea Agreement Is Not Ambiguous*

Ramirez first argues that the plea agreement is ambiguous about the sentence he was to receive, and that the record supports his belief at the time of the June 2018 hearing that he was to receive a sentence of up to three years, rather than a fixed three-year sentence, for his violation of Vehicle Code section 2800.2, subdivision (a). Although Ramirez does not explain the import of this argument, he appears to make it in support of his claim that the trial court improperly denied his motion to withdraw his plea.

10

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.] 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. [Citation.] On the other hand, "[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." ([Civ. Code,] § 1649, [citation].' [Citation.] 'The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement . . . .' " (*People v. Shelton* (2006) 37 Cal.4th 759, 767.)

When interpreting plea agreements, "we apply the ordinary standards of review applicable in cases involving the interpretation of contracts generally." (*People v. Paredes* (2008) 160 Cal.App.4th 496, 507.) Therefore, we conduct a de novo review where the interpretation does not turn on the credibility of extrinsic evidence. (*Ibid.*)

Here, the terms of the plea agreement are detailed in statements made at the June 2018 hearing and Ramirez's plea waiver form. At the June 2018 hearing, it was unequivocally stated seven times that Ramirez was to receive a three-year sentence, and Ramirez twice said he understood this was the case, as follows (all italics added):

In describing the plea agreement to the court, the prosecutor said that Ramirez "is agreeing . . . to *a three-year* state prison term, which is the aggravated term."

Shortly after that description, the prosecutor said, "[I]t's understood that if he shows up at the R and S date, that the sentencing court can allow

11

that admission [to the prior conviction] to be stricken, so that he will simply receive the *three-year* state prison term."

After hearing the prosecutor's description, the court said, "In other words, . . . the Court . . . is looking at the aggravated term of *three*, plus the strike, for double that," to which the prosecutor agreed.

A short time later, Ramirez's counsel said, "And, Your Honor, I erroneously put three years felony probation on the plea form and that's not correct. It's just *three years* state prison."

After the court reviewed the range of sentences Ramirez could receive for the charge to which he was pleading no contest, the prosecutor told the court that the agreement called for Ramirez to receive "[t]he aggravated term of *three* [*years*]."

The court then said, "It is *the three*. [¶] Aggravated term of *three years* in the state prison. [¶] Do you understand that?" Ramirez answered, "Yeah."

Finally, the court told Ramirez that, should he appear for sentencing, "the Court would allow you to withdraw your admission of that prior, which would reduce your term in custody to *three years* in the state prison. [¶] Do you understand that?" Ramirez responded, "Yes, sir."

In other words, at the June 2018 hearing, the prosecutor three times, the court three times, and Ramirez's counsel once, unequivocally stated that Ramirez was to receive a three-year sentence under the plea agreement *and* Ramirez twice said that he understood this was the case.

Despite this clarity regarding the three-year sentence he was to receive under the plea agreement, Ramirez argues certain statements at the June 2018 hearing and in his plea waiver form created an ambiguity in that they suggested he was to receive an upper sentencing limit of three years rather than a fixed three-year term. First, he contends his sentence for violating

12

Vehicle Code section 2800.2, subdivision (a) was ambiguous because it was left undescribed on his plea waiver form after the court struck the handwritten description, "3 felony probation," upon Ramirez's counsel's stating it was in error. This contention is unpersuasive because Ramirez's counsel stated at the same time that his sentence would be "three years state prison."

Ramirez also notes that the prosecutor and then the court stated that his potential sentence, if he did not appear at the sentencing hearing and thereby receive a prison term that was doubled because of his admitted prior conviction, would be "up to" six years in state prison. Ramirez asserts these statements "appear[] to be the source of [his] belief that the plea bargain involved a three[-]year top prison sentence, or 'up to' three years." We see no support for this assertion. As we have discussed, both the prosecutor and the court repeatedly stated at the June 2018 hearing that Ramirez would receive a three-year sentence for his conviction under Vehicle Code section 2800.2, subdivision (a), and Ramirez twice said he understood this was the case.

Also, the hearing record contains an explanation for the prosecutor's reference of a maximum sentence of "up to" six years. He made the reference in the course of explaining to the court that Ramirez, should he fail to appear at the sentencing hearing, was "facing a total exposure of six years *at eighty percent*" and "would be subject to up to six years in state prison, *subject to the credit limitations of a strike prior*." (Italics added.) In other words, the prosecutor appears to have referred to "up to" six years because he was taking into account that Ramirez's actual time in prison would be reduced by the credits he would receive. The prosecutor's language arguably was a little inartful, but it did not create the ambiguity of which Ramirez complains.

Ramirez also contends ambiguity was created by the trial court's advisement to Ramirez that "the potential prison sentence for the plea you are entering a plea to is sixteen months, two years or three years in state prison" because this supposedly implied that all three sentences were available at sentencing. We reject this contention as well. The intent of the court's advisement—the court simply stated the range of sentences possible under law for Ramirez's violation of Vehicle Code section 2800.2, subdivision (a)—was clear, and the advisement was required by law. (See *People v. Barella* (1999) 20 Cal.4th 261, 266 [" 'In all guilty plea and submission cases the defendant shall be advised of the direct consequences of the conviction such as the permissible range of punishment provided by statute . . . .' "].) Also, as Ramirez acknowledges, the court stated immediately afterwards that the "understanding" was that Ramirez would receive the "[a]ggravated term of three years in the state prison," which further made clear the sentence Ramirez would receive under the plea agreement.

Ramirez contends that the court's use of the term "understanding" to describe his prison term created an ambiguity about his sentence in light of the court's advisement that "[a]nother judge will be sentencing you and it will not be me," and its purported failure to explain that the sentencing judge's only choice would be to either impose the three-year sentence or reject Ramirez's negotiated plea entirely. Ramirez contends the court's actions suggested he could receive a sentence within the range of sixteen months, two years, or three years rather than a fixed three-year sentence. We disagree. Read in context, the court's reference to "understanding" can only be a reference to the plea agreement. Further, the court *did* make clear to Ramirez that the sentencing judge's discretion was limited. It stated, "If [the

14

sentencing judge] disapproves of the disposition, you would be permitted to withdraw your plea of guilty or no contest, your not guilty plea would be re-entered, all dismissed charges reinstated and your case scheduled for a preliminary hearing."

Finally, Ramirez contends the prosecutor created an ambiguity about Ramirez's sentence when, in response to Ramirez asking if he would have to go into custody after 60 days if he was found to have cancer, the prosecutor stated: "For the record, that is something we discussed also with defense counsel. If in fact, he gets a life-threatening diagnosis, the sentencing court could certainly consider that and modify the sentence as the sentencing court deems appropriate." Ramirez contends this statement indicates "that for a good enough reason, the sentencing court could actually 'modify the sentence,'" which he "would have reasonably interpreted . . . to mean that the sentencing judge was not required to impose a three[-]year aggravated prison term, and that, if he showed up at sentencing, three years would have been the top sentence the court could impose."

We disagree. The prosecutor said nothing about the sentencing judge considering a modification of Ramirez's sentence "for a good enough reason." Rather, he stated that a modification could be considered "[i]f, in fact, [Ramirez] gets a life-threatening diagnosis." This limited exception was plain and unambiguous, and Ramirez makes no claim that the trial court rejected any contention by him in his motion to withdraw his plea or at the time of sentencing that he suffered from such a diagnosis; to the contrary, he stated in his declaration in support of his withdrawal motion that he no longer believed he was "dying from cancer." The prosecutor's statement is not a basis for finding the plea agreement was ambiguous regarding his sentence.

15

In short, we conclude that the plea agreement plainly and unambiguously calls for Ramirez to receive a fixed, three-year sentence for violating Vehicle Code section 2800.2, subdivision (a) and that the record does not support his claimed belief at the time of the June 2018 hearing that he was to receive a sentence of up to three years, rather than a fixed three-year sentence. The court did not abuse its discretion in rejecting Ramirez's arguments to the contrary.

## C. *There Is No Support for Ramirez's Claim That the Trial Court Applied the Wrong Legal Standard in Denying His Motion To Withdraw His No Contest Plea*

Ramirez next argues that the trial court committed legal error, and therefore abused its discretion, in denying his motion to withdraw his no contest plea because it found that he "knowingly and intelligently entered" the plea when it should have determined whether there was good cause to grant his motion under Penal Code section 1018.

Ramirez confuses the difference between the court's findings and its ruling. The court's finding that he "knowingly and intelligently" entered his no contest plea was in response to the parties' contentions, which focused significantly on whether or not Ramirez had knowing and intelligently entered his no contest plea. Based on this and other findings, the court ruled, "But I don't believe that I have sufficient evidence at this point to lead me to believe that at this late date it's appropriate to allow the withdrawal of the plea. [¶] So under those circumstances and based on the evidence that I have before me, the Court denies the motion to withdraw the plea."

The court did not make an explicit reference to the "good cause" standard in its ruling, but Ramirez does not cite any law indicating it was required to do so. Moreover, at the beginning of the hearing, the court said it had reviewed Ramirez's moving papers, which state Ramirez was moving

16

under the "good cause" standard. And at the hearing, Ramirez's counsel referred to the "good cause" standard shortly before the trial court ruled. Given the court's statement of its ruling and the context in which it made it, we agree with the Attorney General that Ramirez has failed to rebut the presumption that the court was aware of and properly followed the law. (See *People v. Abdelsalam* (2022) 73 Cal.App.5th 654, 662–663 [concluding the appellant did not rebut the presumption that the court applied the proper standard of proof], citing *People v. Ramirez* (2021) 10 Cal.5th 983, 1042 ["Absent evidence to the contrary, we presume that the trial court knew the law and followed it"].)

**D.** ***There Is No Support for Ramirez's Claim That the Trial Court Improperly Relied on Irrelevant Circumstances in Denying His Motion To Withdraw His No Contest Plea***

Ramirez next argues, based on *People v. Sandoval* (2007) 41 Cal.4th 825, that the court erred twice by relying on irrelevant circumstances in denying his motion to withdraw his no contest plea.

In *People v. Sandoval*, our Supreme Court instructed, "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' [Citation.] . . . [A] trial court will abuse its discretion . . . if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*People v. Sandoval*, *supra*, 41 Cal.4th at p. 847.)

Putting aside for argument's sake that *People v. Sandoval* addressed sentencing and not the denial of a motion to withdraw a plea, we disagree with Ramirez that the trial court improperly based its denial of his withdrawal motion on irrelevant matters. The first of the court's two

17

statements that Ramirez cites is as follows: "So from the Court's perspective, I don't see where that confusion is. . . . There was supposed to be an open communication. He did indicate that there was an understanding he might have health concerns and they need to be addressed. We've tried to address them all along the way *with continuances over and over and over again in order to allow him to seek health treatment, which I believe he has been doing.*" (Italics added.)

It is clear from this statement by the trial court that it made the portion we have italicized as part of its explanation why it did not believe there was a legitimate basis for any confusion over the length of Ramirez's sentence. The court's references to the continuances granted were directly tied to its recollection that there was supposed to be "open communication" and, while this communication *did* include the expression of medical concerns, it *did not* include communications about any confusion regarding the length of his sentence. The court did not rely on these continuances in denying Ramirez's withdrawal motion.

The second of the trial court's statements that Ramirez cites as proof that the court improperly denied his withdrawal motion based on irrelevant matters is as follows: "Nothing that I've seen leads me to believe that [the plea] wasn't knowingly and intelligently entered into. . . . The question is whether or not he misunderstood, if he didn't know what was happening. He had a 16-month stretch originally. He had a 15-year stretch another time. I don't—he's not new to the system. The Court does believe that he was aware of what was going on."

Case law indicates that Ramirez's experience with the criminal justice system was relevant to the question of whether he knowingly and intelligently entered his plea. (See *People v. Sivongxxay* (2017) 3 Cal.5th 151,

18

167 [considering a defendant's prior experience with criminal justice system in determining whether waiver of jury was knowing and intelligent under a totality of the circumstances], quoting *Parke v. Raley* (1992) 506 U.S. 20, 37 ["evidence of a defendant's prior experience with the criminal justice system [is] relevant to the question whether he knowingly waived constitutional rights"].) Therefore, the court did nothing improper in considering Ramirez's prior experience with the criminal justice system.

In short, Ramirez's argument that the trial court improperly relied on irrelevant matters in denying his withdrawal motion is without merit.

E. ***There Is No Support for Ramirez's Other Claims of Error by the Trial Court in Denying His Motion To Withdraw His No Contest Plea***

Finally, Ramirez argues the trial court abused its discretion in denying his motion to withdraw his no contest plea because he showed good cause for his withdrawal in two respects.

First, Ramirez contends, as he does in arguing the plea agreement is ambiguous, that there "was considerable evidence at the plea hearing" to support what he stated in his declaration as his "genuine understanding . . . that the amount of time to be served would be determined at sentencing, and that it would be a top of 3 years." But as we have already discussed, the plea agreement plainly and unambiguously calls for Ramirez to receive a fixed, three-year sentence for violating Vehicle Code section 2800.2, subdivision (a), and the record does not support his claimed belief at the time of the June 2018 hearing that he was to receive a sentence of up to three years rather than a fixed three-year sentence. Also, the trial court was within its discretion to find, as is implied by its ruling, that there was not clear and convincing evidence Ramirez genuinely believed, even if mistaken, that he was to receive a sentence of up to three years, particularly in light of the

19

substantial evidence to the contrary that we have discussed and regardless of Ramirez's declaration statements. (See *People v. Simmons, supra,* 233 Cal.App.4th at p. 1466 [" 'good cause must be shown by clear and convincing evidence' "]; *Breslin, supra,* 205 Cal.App.4th at p. 1416 [in reviewing a court's denial of a motion to withdraw a plea, " 'a reviewing court must adopt the trial court's factual findings if substantial evidence supports them' "]; *People v. Houston* (2012) 54 Cal.4th 1186, 1215 [when reviewing a record for substantial evidence, " '[w]e do not reweigh the evidence or reevaluate a witness's credibility' "].) The court did not abuse its discretion in rejecting Ramirez's arguments to the contrary.

Second, Ramirez contends that, as he stated in his declaration below, he entered his no contest plea at a time when he mistakenly believed that he was dying of cancer, which qualifies under Penal Code section 1018 as a ' 'mistake . . . that overcame [his] exercise of free judgment' " and, further, that the provision of the plea agreement that provided for his immediate release subject to a *Cruz* waiver so that he could receive outside medical treatment was also a factor that overcame his exercise of free judgment.

"All decisions to plead guilty are heavily influenced by difficult questions as to the strength of the prosecution's case and the likelihood of securing leniency. [Citation.] ' "Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering his [or her] decision." ' " (*Breslin, supra,* 205 Cal.App.4th at p. 1417, quoting *People v. Hunt* (1985) 174 Cal.App.3d 95, 103.)

Ramirez's contentions indicate that since the June 2018 hearing, he has second-guessed his considerations in entering his plea, not that he did not exercise free judgment in entering his plea. Indeed, his motion all but states that to be the case, contending that "there has been a change of circumstances to Mr. Ramirez's medical condition that has not only changed his physical outlook, but his mental outlook as well." But, again, " '[a] plea may not be withdrawn simply because the defendant has changed his [or her] mind.' " (*Breslin, supra*, 205 Cal.App.4th at p. 1416.) Further, the fact that Ramirez received extensive treatment for kidney cancer in the three years after the June 2018 hearing suggests he had reason to believe at the time of the hearing that he at least faced a risk that he could die of cancer if he did not receive further treatment. The trial court did not abuse its discretion in rejecting Ramirez's contentions about his exercise of free judgment because substantial evidence supports that determination.

## III. DISPOSITION

The judgment is affirmed.

STREETER, Acting P. J.

WE CONCUR:

GOLDMAN, J.
WHITMAN, J.*

---

\* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.